IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3246-FL

| | | |
|---|---|---|
| CHRISTOPHER MOSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OFFICER SYKES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 57) pursuant to Federal Rule of Civil Procedure 56(a), which was fully briefed. Also before the court are plaintiff's motion for summary judgment (DE 47), motion for reconsideration (DE 51), and motion for trial (DE 69). Defendant did not respond to plaintiff's motions. Finally, the action is before the court on plaintiff's response to the court's October 10, 2013, order permitting plaintiff to particularize his action. In this posture, the issues raised are ripe for review. For the following reasons, the court grants defendant's motion for summary judgment, denies plaintiff's motion for reconsideration, denies plaintiff's motion for summary judgment, and denies as moot plaintiff's motion for trial. The court also dismisses the claims plaintiff raised in his particularized complaint.

**STATEMENT OF THE CASE**

On December 21, 2012, plaintiff filed this *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that defendant Brunswick County Deputy Sheriff Eric Sykes ("defendant") used excessive force against him at the time of his arrest. The court allowed plaintiff to proceed with this claim.

Plaintiff subsequently filed two motions to amend his complaint, three motions to compel discovery, a motion to amend his request for admissions, and a motion "to reveal name and informant[.]"

On October 10, 2013, the court entered an order granting plaintiff's first motion to amend as a matter of right. The court also determined that plaintiff's amended pleadings were unclear and directed him to particularize his action. Because the court directed plaintiff to particularize his complaint, it denied as moot plaintiff's remaining motion to amend. The court also denied plaintiff's motions to compel as premature. Finally, the court denied plaintiff's request for admissions and his motion "to reveal name and informant[.]"

On October 17, 2013, plaintiff filed a motion for summary judgment. Then, on October 25, 2013, plaintiff filed his response to the court's October 10, 2013, motion directing him to particularize his complaint. On the same date, plaintiff filed a motion for reconsideration of the court's ruling on his motions to compel. In response, defendant filed a motion to stay discovery pending the resolution of plaintiff's motion for summary judgment. The motion was fully briefed. On November 21, 2013, the court entered an order granting defendant's motion to stay.

On December 16, 2013, defendant filed a motion for summary judgment, arguing that plaintiff cannot establish a constitutional violation. In the alternative, defendant asserts the affirmative defense of qualified immunity. In support of his motion, defendant submitted his personal affidavit, the affidavit of Brunswick County Deputy Sheriff Brian Medlin ("Medlin"), and the video recordings from the defendant and Medlin's patrol vehicles.[1]

---

[1] Defendant submitted the videotape recordings from both his own and Medlin's patrol cars. Video from the camera in Medlin's patrol car is clear but does not show the alleged excessive force incident due to the positioning of the patrol vehicles. (Medlin Aff. Ex. A.) Video from the camera in defendant's patrol car is not clear due to condensation on the car's front window. (Sykes Aff. ¶ 8 and Ex. B.)

Plaintiff responded to defendant's motion for summary judgment and included a document captioned "amend to declaration in opposition to defendants' motion for summary judgment," a Brunswick County Sheriff's Office Investigation Report, a statement of disputed facts, and a statement made by the driver of the vehicle on the night at issue. Plaintiff subsequently filed a motion for trial.

**STATEMENT OF FACTS**

Aside from noted exceptions below, the undisputed facts are as follows. On August 16, 2012, plaintiff was a passenger in a car traveling along U.S. Highway 74/76 in a rural area in Brunswick County. (Medlin and Sykes Affs. ¶ 3.) At approximately 2:10 a.m., Medlin initiated a traffic stop of a car in which plaintiff was traveling as a passenger. (Medlin Aff. ¶ 3.) Defendant, a K-9 officer, was dispatched to the scene of the traffic stop to assist Medlin. (Sykes Aff. ¶ 3.) Narcotics detectives had informed both defendant and Medlin that plaintiff would be traveling through Brunswick County on the night at issue and would be transporting a large amount of heroin to Wilmington, North Carolina. (Medlin and Sykes Aff. ¶ 4.) The deputies also knew that plaintiff was on parole from a life sentence for a murder conviction in Forsyth County. (Id.)

When defendant arrived at the scene, Medlin was speaking with the driver of the vehicle. (Sykes Aff. ¶ 5.) Defendant then stood by the driver's side of the stopped car and spoke with plaintiff. (Id. ¶ 6.) Medlin asked plaintiff to get out of the car and stand next to the driver of the car. Medlin then asked permission to pat down plaintiff. (Sykes Aff.; Ex. A, T 2:31: 31-33.) Plaintiff consented to the pat down and complied with Medlin's request. (Id.)

After a brief discussion with the driver of the stopped vehicle, defendant searched the vehicle and observed a duffel bag on the back seat. (Sykes Aff. ¶ 6.) Defendant opened the bag and found

3

what he believed, due to his experience as a patrol and K-9 officer, was a large amount of heroin. (Id.) Narcotics officers in the sheriff's office later reported that there were over one thousand nine hundred (1,900) bindles of heroin in the duffel bag. (Id.)

After finding the heroin, defendant immediately went to plaintiff, put his hand on plaintiff's arm, put plaintiff's arm behind his back, and pushed plaintiff down onto his stomach. (Id. ¶ 7; Ex. T 2:34:14; Ex. B, T 2:35:06-08.) Contrary to plaintiff's contention that defendant uttered an obscenity as he pushed plaintiff to the ground, the video reflects that defendant instead ordered that plaintiff get down on the ground. (Sykes Aff. ¶ 7.) Defendant then placed plaintiff in handcuffs and waited for narcotics detectives to arrive. (Id.) After the narcotics detectives arrived, defendant drove plaintiff to the Brunswick County Jail for booking. (Id.)

## DISCUSSION

A.     Motion for Reconsideration

Plaintiff requests that the court reconsider its October 10, 2013, order denying his motions for discovery. Plaintiff has not set forth any reason justifying reconsideration of the court's October 10, 2013, order. Additionally, defendant has set forth the affirmative defense of qualified immunity which is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also, Lescs v. Martinsburg Police Dep't, 138 F. App'x. 562, 564 (4th Cir. 2005) (per curiam) (holding that the district court was required to rule on defendant's dispositive motion raising qualified immunity issues prior to allowing discovery). In Mitchell, the United States Supreme Court observed that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526. Because defendant raised the

4

defense of qualified immunity and asserts that plaintiff cannot establish a constitutional violation, he is entitled to a resolution of the issue prior to being subject to the burdens of litigation, including discovery. Therefore, plaintiff's motion for reconsideration is DENIED.

B.   Motion for Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

   2.   Analysis

Defendant raises the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified

5

immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

      a.      Excessive Force Claim

Claims of excessive force during an arrest or investigatory stop are governed by the Fourth Amendment to the United States Constitution and are analyzed under an "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). The relevant question is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996). This standard mandates "a careful balancing" of Fourth Amendment rights "against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Application of the standard is highly fact dependent; factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest." Id. The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Thus, to allege violation of a constitutionally protected right, plaintiff must allege facts demonstrating that defendant used force in an objectively unreasonable manner under the circumstances.

The court begins its analysis by considering the severity of the crime at issue. In this action, defendant observed a large amount of heroin in the car in which plaintiff was traveling as a passenger, and suspected that plaintiff was transporting the heroin for sale in Wilmington, North Carolina. The possession or transportation of more than four grams of heroin is a felony. See N.C.

Gen. Stat. § 90-95(h)(4). Thus, because plaintiff was suspected of engaging in a felony, the severity of the crime at issue was high, and this factor weighs in favor of defendant and against plaintiff.

The court now considers the second and third relevant factors – whether plaintiff posed an immediate threat to the safety of the officers and others and whether plaintiff was actively resisting arrest. The parties agree that plaintiff was not actively resisting arrest at the time of his arrest, and this factor weighs in favor of plaintiff. Defendant, however, argues that the minimal force used was necessary for the officers' safety. In particular, at the time of the alleged incident, defendant was aware that plaintiff was suspected of transporting a large amount of heroin to the Wilmington area, and that plaintiff was on parole from a North Carolina State court murder conviction for which plaintiff received a life sentence. (Sykes Aff. ¶ 4.) Moreover, the incident at issue occurred in the course of a traffic stop and the United States Supreme Court has "recognized that traffic stops are especially fraught with danger to police officers." Arizona v. Johnson, 555 U.S. 323, 330 (2009); see also, Givens v. Demaioribus, No. 3:09-CV-158-RJC, 2012 WL 706122, at *8 (W.D.N.C. Mar. 5, 2012) ("The Fourth Amendment does not require an arresting officer to first ask for voluntary submission to arrest where such officer is faced with an arrestee he believes to be potentially armed and dangerous and who has recently committed a serious offense."); Cleary v. Green, No. CCB-07-1202, 2008 WL 4900548, at *4 (D. Md. Nov. 6, 2008) (stating that "police officers face significant dangers during lawful traffic stops, particularly those involving passengers, and courts have recognized their heightened authority to issue orders to passengers in order to protect themselves".) Based upon this information, and in light of the fact that plaintiff faced parole revocation and a life sentence, defendant had reason to believe that plaintiff was both a flight and safety risk.

7

Accordingly, the second factor weighs in favor of plaintiff, but the third factor weighs in favor of defendant.

In addition to the foregoing, the time of day and physical size of the parties are important considerations in the totality of the circumstances. See McCaskill v. Yankalunas, 245 F. App'x 274, 278 (4th Cir. 2007) ("Additionally, the time of day is an important consideration in the totality of circumstances . . . .") Specifically, the record reflects that the traffic stop occurred at approximately 2:30 a.m. on a dark highway in a rural area. The record further reflects that plaintiff is five feet eight inches tall and weighs two hundred twenty (220) pounds and the defendant is five feet five inches and weighs approximately one hundred thirty (130) pounds. (Medlin Aff. ¶ 5; Sykes Aff. Ex. C p. 2.) Considering all of these factors, the court concludes that a reasonable officer in defendant's position would have imminently feared for his safety and the safety of others.

Additionally, even crediting plaintiff's allegations as true, the alleged use of excessive force was minor and contained to the moment defendant placed plaintiff under arrest. It is noteworthy that plaintiff does not allege that defendant punched or slapped him, or that defendant used any force after plaintiff was secured. Rather, from a review of the video, the interaction between the parties is calm both prior to and subsequent to plaintiff's arrest.

Although the court is aware that the lack of serious physical injury is not dispositive of a Fourth Amendment excessive force claim, the lack of a serious physical injury is relevant to the excessive force inquiry. Wilkins v. Gaddy, 559 U.S. 34, 37 (4th Cir. 2010). For instance, in this case, aside from plaintiff's own conclusory assertion that the alleged use of excessive force caused injury to his lower back and hip, there is no evidence that plaintiff suffered any injury as a result of the alleged use of excessive force. Nor does the record reflect that plaintiff complained of any

8

injuries from the alleged use of excessive force either at the scene or at the jail. (Sykes Aff. ¶ 9; Ex. C, p. 4.) The lack of serious physical injury in conjunction with the minor use of force, in this case, weigh in favor of defendant. Cf., Wilkins, 559 U.S. at 38 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (internal quotation and citation omitted); see also, McMillian v. Lecony, No. 5:09-CV-175-BR, 2011 WL 2144628, at *10-11 (E.D.N.C. May 31, 2011) (collecting cases), aff'd, 455 F. App'x 295 (4th Cir. 2011).

Weighing the pertinent factors, the court finds that defendant's use of force was not excessive, particularly in light of the relatively minor use of force employed to arrest a potentially dangerous person for a serious offense. Because plaintiff fails to establish a constitutional violation, defendant is entitled to qualified immunity. As a result, defendant's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

        b.     New Claims

Plaintiff appears to raise new claims in his January 30, 2014, pleading captioned "Amend to Declaration in Opposition to Defendants' Motion for Summary Judgment." (DE 66.) Plaintiff, however, has not requested leave of court to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a) to include any new claim. Because plaintiff has not moved this court to amend his complaint pursuant to Rule 15(a) to include any new claims, the new claims are not properly before the court, and are DISMISSED without prejudice. See United States v. Jones, No. 87-7313, 1988 WL 21257, at *1 (4th Cir. Mar. 9, 1988) ("Even under liberal rules of interpretation, a court should not be required to amend a complaint *sua sponte* every time a pleading is filed which arguably raises

9

a new claim."); see also, Crump v. N.C. Dep't of Corr, No. 3:05CV325-02-MU, 2009 WL 2738459, at * 5 (W.D.N.C. Aug. 26, 2009).

C.     Frivolity Review

The court now conducts a frivolity review of plaintiff's amended pleading submitted on October 25, 2013. See 28 U.S.C. § 1915(e)(2)(B). A complaint may be found frivolous because of either legal or factual deficiencies. First, a complaint is frivolous where "it lacks an arguable basis . . . in law." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are based on an "indisputably meritless legal theory" and include "claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (quoting Neitzke, 490 U.S. at 327). Under this standard, complaints may be dismissed for failure to state a claim cognizable in law, although frivolity is a more lenient standard than that for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Neitzke, 490 U.S. at 328. Second, a complaint may be frivolous where it "lacks an arguable basis . . . in fact." Id. at 325. Section 1915 permits federal courts "to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." See Denton v. Hernandez, 504 U.S. 25, 32 (1992) (citing Neitzke, 490 U.S. at 327).

Plaintiff, in his amended pleading, seeks to include a claim against Medlin for failing to intervene in the alleged assault and a supervisor liability claim against parties plaintiff identifies as Captain Davis and Sheriff Ingram. Because the court has determined that defendant did not violate plaintiff's Fourth Amendment rights, plaintiff's failure to protect and supervisor liability claims also fail. See Monroe v. Shaffer, No. 95-1041, 1996 WL 329607, at *4 (4th Cir. June 17, 1996) (dismissing failure to protect claim where jury determined that officers did not use excessive force); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("Neither Monell v. New York City Dept. of Social Services, 436 U.S. 658 [] (1978), nor any other of our cases authorizes the award of

10

damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); Temkin v. Frederick Cnty Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). Thus, these claims are DISMISSED for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

For the foregoing reasons, the court rules as follows:

(1) Defendants' motion for summary judgment (DE 57) is GRANTED;

(2) Because the court granted defendant's motion for summary judgment, plaintiff's motion for a jury trial (DE 69) is DENIED as MOOT;

(3) Plaintiff's motion for summary judgment (DE 47) is DENIED;

(4) The claims set forth in plaintiff's October 25, 2013, amended pleading are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

(5) The new claims set forth in plaintiff's January 30, 2014, response to defendant's motion for summary judgment are DISMISSED without prejudice;

(6) Plaintiff's motion for reconsideration (DE 51) is DENIED; and

11

(7) The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 24th day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

12